The United States Rolling Stock Co. v. Potter.

---

THE UNITED STATES ROLLING STOCK CO. v. POTTER.

1. **Practice:** DEFAULT: ADMINISTRATOR. Where one of four executors resigned, it was *held*, that service of notice upon him eight months after his resignation, in an action against the executors as such, conferred no jurisdiction to enter judgment by default.

2. **Contract:** CONSTRUCTION OF. A contract between a party and a railroad company provided that he should furnish for the latter a specified sum of money to be expended as designated; and also, that he should be president, and should take possession of, and operate the road to the best advantage, devoting the earnings to certain specified objects, operating the road in the name of the company, and being paid for his services: *Held*, that the contract did not constitute a lease, and that his individual estate was not liable upon a contract entered into by the company prior to his contract therewith.

*Appeal from Des Moines Circuit County.*

TUESDAY, APRIL 2.

THE plaintiff filed its petition against O. W. Potter, Samuel R. Mumford, George H. Wyman, and T. C. Owen, executors of the estate of Eber Ward, deceased, representing that about May 10, 1873, plaintiff entered into a written contract with the Burlington and Southwestern Railway Company, agreeing to rent said company certain rolling stock, to be used upon said railway company's road, at eight dollars per day for each locomotive; that about May 10, 1873, in accordance therewith, two locomotives and tenders were delivered to said railway company, and were used on said railway from then till November 30, 1873; that plaintiff was to be reimbursed for insurance, for which it has paid $91.80; that August 11,

The United States Rolling Stock Co. v. Potter.

1873, the Burlington and Southwestern Railway Company did grant, demise and lease unto Eber B. Ward all their entire line of railway, said lease to continue for a term of five years from August 11, 1873; that said lessee was to pay, as per his said lease, out of the earnings of said road, all the running expenses, and all other charges which said company might become liable to pay on account of operating said road; that in accordance with said contract said Ward took possession of said road, and all property in its possession, and said rolling stock, by virtue thereof, came into the possession of said Ward on said August 11, 1873, and he retained possession of the same, and continued to use it in operating the road, up to November 30, 1873, when the same was surrendered; that the rental of said rolling stock was a charge which said company became liable to pay on account of operating the road, and that the same, by the terms of the lease, was to be paid first, out of the earnings of said road; that there were large earnings in the operation of said road by said lessee, which came into his possession, more than sufficient to pay said rent. Plaintiff says that said Eber B. Ward assumed and undertook to pay said rental, and thereby became personally responsible for the same. The petition further alleges the fair rental value of the locomotives, for the time they were used by defendant, to be $2,424, together with insurance, $91.80. Plaintiff asks judgment for $2,424, with interest and costs.

The original notice was served on Orrin W. Potter, in Chicago, Illinois, January 20, 1876. It is agreed that the records of the Circuit Court of Des Moines county show, in the matter of the estate of Eber B. Ward, that O. W. Potter filed his final report and resignation as executor of said estate, on the 28th of May, 1875, but that the resignation was not accepted by an order of the court, until February, 1876.

On the 10th day of March, 1876, no appearance having been made, a default was entered, and judgment was rendered allowing plaintiff's claim to the amount of $1,629.

On the 12th day of December, 1876, T. C. Owen, S. R.

Mumford, and George H. Wyman, executors, appeared and filed their motion to set aside the default and judgment.

On the 15th day of December, 1876, the resignation of these three remaining executors was accepted, and Orrin W. Potter was appointed administrator *cum testamento annexo*, and was substituted as defendant in the cause.

On the 21st day of February, 1877, the motion to set aside the default and judgment was sustained, to which the plaintiff excepted.

On the 23d day of February, 1877, the defendant filed his answer, whi contains a general denial; an averment of want of know edge or information sufficient to form a belief as to the alle ations relating to the transactions between plaintiff and the Burlington and Southwestern Railway Company, set out in petition; an admission that Eber B. Ward entered into a written agreement with the Burlington and Southwestern Railway, of which he supposed the exhibit attached to the petition is a copy; a denial that Ward ever *leased* said railroad, or ever took possession of said property, or controlled or in any way managed the same as *lessee*, or that he ever undertook to pay the rental claimed by plaintiff, or became personally responsible therefor; an averment that Ward faithfully carried out all the duties imposed upon him by said contract, and faithfully applied all the earnings of said road, which came into his hands thereunder, in the manner therein pointed out.

The contract, under which it is claimed E. B. Ward became liable for the rental of the locomotives in question, is attached to the petition, marked Exhibit "B," and is as follows:

"This indenture, made this 11th day of August, 1873, by and between the Burlington and Southwestern Railway Company, a body corporate, holding and operating a line of railroad under and by virtue of the laws of the States of Iowa and Missouri, party of the first part, and Eber B. Ward, of of the city of Detroit, in the State of Michigan, party of the second part, witnesseth:

"That, whereas, the said party of the first part, in building and equipping. their said road from Viele, in the State of Iowa, to Stanley City, in the State of Missouri, has incurred certain liabilities to divers and sundry persons, which the said company is unable to pay, and by reason thereof, is unable to complete its road to Stanley City;

"And, whereas, the said company has issued its bonds to the amount of twenty thousand dollars per mile of its road, which are secured by a first mortgage on said road and its equipments, having twenty-five years to run, which bonds are not saleable, for the reason, as said company believes, that their said road is still unfinished, and not in a condition to earn the interest on said bonds;

"And, whereas, the holders of the bonds of said company, in order to increase the market value of the bonds held by them and by the company, desire to have the said Ward enter into this arrangement, and, to enable him to do so, have agreed to raise and loan the said Ward, for a term of years, upon securities furnished by him, the sum of seven hundred and fifty thousand dollars ($750,000);

"And, whereas, the said Eber B. Ward, in order to aid the said company to finish their said road to Stanley City aforesaid, the distance of about forty miles, and to put the same in good working order, and pay certain of the obligations of said company, has agreed to lease and finish their said road to Stanley City aforesaid;—

"Now, therefore, in consideration of the sum of five dollars, to it paid by the said party of the second part, and of the obligations hereinafter entered into by the said Ward, the said party of the first part does hereby grant, demise and lease, unto the said Eber B. Ward, their entire line of railroad, including the unfinished portion thereof, to have and to hold, operate and traffic thereon, with all the rights, immunities, privileges and appurtenances thereunto belonging, with all the real estate, track, rolling stock, depots, offices, tools, apparatus and other things belonging to said company or road, either for

the purpose of constructing or operating the same, together with all the rights and privileges of said company to and with other companies and railroads, for traffic over other roads or otherwise, unto the said party of the second part, for and during the full end and term of five years, commencing on the 11th day of August, 1873, under and subject to the stipulations hereinafter contained.

"And the said Eber B. Ward, on his part, hereby covenants and agrees to and with said railway company, that he will immediately enter upon and take possession of said road; that he will furnish the sum of seven hundred and fifty thousand dollars ($750,000), to be applied by him to the following purposes, to-wit:

"*First*—To pay for the necessary iron, spikes and joints for the track of said road, from its present terminus to Stanley City, in the State of Missouri, forty miles as estimated, and estimated to cost $255,000, the said company agreeing that they have now on hand iron sufficient to lay or cover five miles or thereabouts, which the said Ward agrees to lay, making in all about forty miles.

"*Second*—To pay certain construction indebtedness of said company already incurred, and to be incurred, to complete the road to Stanley City, one hundred and fifty thousand dollars ($150,000).

"*Third*—To pay the notes heretofore indorsed by said Ward for said company, two hundred and forty-five thousand dollars ($245,000) more or less.

"*Fourth*—When the said road is completed to Stanley City, and the said bondholders shall pay over to said Ward the last one hundred thousand dollars ($100,000) provided for, the said Ward is to expend the same for rolling stock and equipments for said road.

"*Fifth*—Said Ward shall use and operate said road to the best advantage he may be able, and pay out of the earnings thereof—First, all the running expenses, salaries of officers, taxes, necessary repairs and fences, and all other charges and

expenses which said company might become liable to pay, on account of operating said road. Second, if, in his judgment, it be advisable, he may pay to the western creditors of said company such sums of money as may be due to them, or such portion of them as may be necessary to enable him to carry out this contract, such sums being first audited and certified by the board of directors of the company or the executive committee, if disputed; and thirdly, the net earnings of the said road shall constitute a sinking fund to repay said Ward the seven hundred and fifty thousand dollars ($750,000) so advanced by him as above provided for, with interest at the rate of ten per cent per annum, to be paid semi-annually, and in case the road does not earn sufficient to pay its running expenses and interest, then the interest to become principal, and draw interest at the same rate. There shall be included in the current expenses, and be paid to said Ward for his services and commissions, such reasonable sum as shall be mutually agreed upon by the board of directors and said Ward, or by such persons as the same may be referred to by them. It is understood and agreed, that in case the net earnings of said road shall not be sufficient to pay such indebtedness as said Ward shall be obliged to pay for said company, together with the principal sum of seven hundred and fifty thousand dollars ($750,000) with interest thereon, within five years as provided for in this lease, then the said time shall be extended and continued, and this lease shall be in force upon the same terms and conditions for a sufficient length of time, more or less, to fully complete and pay up the seven hundred and fifty thousand dollars ($750,000) with interest; or, in case the company, its assigns, or the holders of its bonds, at any time after the completion of said road, as above provided for, shall pay or cause to be paid to the said Ward the full sum of seven hundred and fifty thousand dollars ($750,000), and interest at ten per cent per annum semi-annually, together with his costs and charges and any liabilities which he may have incurred for said company for any of the purposes herein stated,.

then from and after that date this contract shall cease, and the said company shall have the right to enter into and take possession of the said road, and the said Ward shall deliver possession thereof forthwith.

"It is further understood and agreed, that the said party of the first part shall, immediately upon the execution of this instrument, assign, or cause to be assigned, a majority of all the stock of said company to William J. Rotch and E. D. Mandell, of New Bedford, and Elijah Smith, of Boston, Trustees, who are to hold said stock during the continuance of this lease, with a *pro rata* increase, if any stock is hereafter issued by said company, with power to vote upon such stock, and it shall be their duty to vote upon such stock as said Ward shall direct, to the intent that it shall secure the execution of this contract in its original scope and purpose, thereby protecting said Ward in the fulfillment of this contract by said railway company during the continuance of this lease, and at the expiration thereof said trustees shall re-assign said stock to its proper owners. The said Ward shall have full power and authority to nominate and appoint all the officers, attorneys, solicitors and counselors for said company, at such salaries, and upon such terms as in his judgment shall be for the best interest of the company, who, under his direction, shall faithfully carry out the covenants herein contained; said Ward shall be President or Managing Director, as he may choose, during the continuance of this lease, to the end and with the intent and understanding, that said Ward shall have complete and absolute control of said road, until he is fully paid and satisfied of his advances, charges and interest, and upon fulfillment of this lease in good faith by the said company, then his control shall cease, and the said party of the first part further agree to deliver to William W. Crapo, of New Bedford, as trustee, the proposed consolidated bonds of said company, amounting at their par value to the sum of one million of dollars, to be held by him as collateral security for the loan above provided for, and for the fulfillment of

this contract, and in case the holders of the company's bonds proceed to foreclose the mortgage on the said road, or in case any of the creditors of the company put the road into bankruptcy, the said Eber B. Ward shall, in that case, if he so elect, be the absolute owner of said bonds, to the extent and value of the indebtedness of said company to him at that time. But at any time when the said company, or the holders of its bonds, shall fully pay to said Ward its entire indebtedness to him, he shall thereupon cause the trustees to surrender the said bonds to said company, and this contract shall then cease.

"And it is further agreed, by and between the parties hereto, that in case of the death of said Eber B. Ward, before the complete fulfillment of the terms of this lease, then Samuel P. Burt and William W. Crapo, of New Bedford, Massachusetts, and Tubal C. Owen, of Detroit, Michigan, or the survivors of them, shall constitute a Board of Trustees, and they are hereby appointed as such to act in the place and stead of said Ward, with all the powers and privileges granted to him, to carry out the requirements of this agreement."

Exhibit "A," attached to the petition, is a contract dated May 10, 1873, executed by plaintiff and the Burlington and Southwestern Railway Company, by which plaintiff agrees to furnish said company certain rolling stock, for which said company agrees to pay a rental of eight dollars per each working day, for each locomotive, rent to be calculated to the first day of each calendar month, and paid without deduction or delay, and all premiums of insurance paid by plaintiff to be repaid by said railway company.

The plaintiff offered upon the trial of the cause the following agreed statement of facts:

"It is hereby agreed that the following facts can be proven in this case, subject to all legal objections made on the trial.

"1. The Burlington and Southwestern Railway Company entered into the written contract with plaintiff, attached hereto as Exhibit "A," and in accordance with said contract, said

railway company, on May 10, 1873, received possession of two locomotives and tenders, Nos. 316 and 317, and said rolling stock was used in the operation of said railway from that date until November 30, 1873.

"2. Eber B. Ward in his life-time entered into the contract attached hereto as Exhibit 'B,' but did not take actual control or possession thereof till the 1st day of September, 1873, and did not begin to receive the revenues of said road till that day; that from September 1, 1873, to October 8, 1874, and while said road was being operated under contract (Exhibit 'B'), as hereinbefore stated, it was operated in the name of the Burlington and Southwestern Railway Company, E. B. Ward being President of said company, and exercising such control as such President, as he had the right and power under said contract (Exhibit 'B') to exercise.

"3. The following is a correct statement of account due plaintiff under said contract (Exhibit 'A'), leaving the court to determine from the facts how much thereof, if any, this defendant is liable for:

"Rent, May 10, 1873, to November 30, 1873,   $2,544 00
"Add insurance         -         -         -         -         91 80
                                                                  $2,635 80
"Credit by repairs         -         -         -         211 74
                                                                  $2,424 06

"And the use of said rolling stock was reasonably worth the sum above set forth, and said rent was, by contract, due and payable monthly, and should draw six per cent after due, and no part of said claim has been paid.

"4. E. B. Ward, while operating said road, received all its earnings for the purposes and in the manner provided in said contract (Exhibit 'B'), and on the 19th day of October, 1874, in a certain cause then pending in the District Court of Davis county, Iowa, wherein the said Eber B. Ward was plaintiff,

and the Burlington and Southwestern Railway Company *et al.* were defendants, the court appointed E. McKitterick receiver of said railway, and he at once took possession of said road, and said E. B. Ward turned over to said receiver, at the time of his taking possession, the sum of $3,897.66. But the outstanding liabilities of said Ward, under said contract (Exhibit 'B'), for the running expenses, salaries of officers, etc., on account of the operating of said road during the control thereof by him, was in excess of said sum of $3,897.66, at the time said McKitterick took possession of the road, and said sum was all paid out by said McKitterick on pay rolls for operating expenses incurred while said Ward was managing said road. All, or nearly all, of said debts so paid by said McKitterick, were incurred subsequent to the falling due of plaintiff's claim, and the gross earnings of said road, after November 30, 1873, largely exceeded plaintiff's entire claim, and during the receivership of said McKitterick there was a dividend paid to said Ward's estate of $1,500. This dividend was paid upon a judgment and decree rendered in the aforesaid cause in the Davis county District Court, October 19, 1874, and out of the earnings which accrued after the road passed into the hands of said McKitterick, receiver. Said decree may be considered as in evidence for what it is competent to prove.

"5. E. B. Ward died January 1, 1875, and O. W. Potter, defendant, is the administrator of his estate; administration granted April 12, 1875, in Iowa; first publication of notice April 26, 1875, and plaintiff's claim was filed against said estate November 18, 1875."

The court found that plaintiff was entitled to recover for the reasonable value of the use of plaintiff's property from the 1st day of September to the 30th day of November, 1873, with six per cent interest from the end of each month, and rendered judgment for the plaintiff for the sum of $1,345.80. Both parties appeal.

*Blake & Hammack*, for plaintiff.

*H. H. Trimble* and *E. S. Huston*, for defendant.

DAY, J.—I. The plaintiff appeals from the order of the court setting aside the judgment by default, and permitting a defense. The original executors of the estate of Eber B. Ward were O. W. Potter, Samuel R. Mumford, George H. Wyman, and T. C. Owen, all non-residents of this State, the said Eber B. Ward being, at the time of his death, a resident of the State of Michigan. Administration was granted to these executors in. Iowa, pursuant to the provisions of section 2368 of the Code, on the 12th day of April, 1875. O. W. Potter filed his final report and resignation as executor of said estate, in the Circuit Court of Des Moines county, Iowa, on the 28th day of May, 1875. The resignation was not accepted by an order of the court until February 22, 1876. The original notice was served upon Orrin W. Potter, alone, in Chicago, on the 20th day of January, 1876, almost eight months after his resignation was tendered. An executor may refuse to accept the trust, or may create a vacancy by removal from the State. Code, § 2347. We think, also, that he may surrender his trust by resignation, and that, after the lapse of a reasonable time for supplying his place, he ought not to be required, against his will, to take further action in the administration of the estate. In this case there were three executors remaining, who are presumed competent to act. There was, therefore, no necessity for supplying Potter's place. Under the circumstances of this case, after the lapse of so long a time from the tendering of his resignation, we are of opinion that Potter was released from the duty of participating in the settlement of the estate, without any formal order of the acceptance of his resignation. It follows that the service of original notice upon Potter conferred no jurisdiction upon the court, and that for that reason the judgment by default was properly set aside. It is claimed, however, that no affidavit of merits

*(margin note: 1. PRACTICE: default: administrator.)*

was filed, nor did the defendant plead forthwith, nor was the application made at the term at which the default was entered. Code, § 2871. This section does not apply where default has been entered without legal authority. *Boals v. Shules,* 29 Iowa, 507.

II. The plaintiff claims that the contract between Ward and the Burlington and Southwestern Railway Company is a lease; that Ward became the lessee of the company, and became liable for the payment of the operating expenses of the company out of

2. CONTRACT: construction of. his private means. The contract declares that the Burlington and Southwestern Railway Company, "*does hereby grant, demise and lease,* unto the said Eber B. Ward, their entire line of railroad, including the unfinished portion thereof," and it further provides that "said Ward shall be President or Managing Director, as he may choose, *during the continuance of this lease.*" But the real nature of the agreement is to be determined from a consideration of all its parts, and not from the above, or like expressions. Considering the contract in this manner, it appears that the bonds of the company were unsalable because the road was unfinished, and not in a condition to earn the interest on the bonds. Ward agreed to furnish to the company the sum of $750,000, to be expended in the construction of forty additional miles of road, estimated to cost $255,000; in paying construction indebtedness incurred, and to be incurred, $150,000; in payment of notes indorsed by Ward for the company, $245,000; in purchasing rolling stock and equipments, $100,000. Ward agreed to enter upon and take possession of the road, to use and operate it to the best advantage he might be able, to pay out of the earnings thereof—*First,* all the running expenses, salaries of officers, taxes, necessary repairs, fences, and all other charges and expenses which the company might be liable to pay, on account of operating said road; *second,* he was authorized to pay certain western creditors of the road; *third,* the net earnings of the road were to be applied to the repayment to Ward of the sum of $750,000, with ten per cent interest, pay-

able semi-annually. It is further provided that there should be included in the current expenses, and be paid to Ward, for his services and commissions, such reasonable sum as might be mutually agreed upon. It is further provided, that in case the net earnings of the road shall not be sufficient within five years to pay such indebtedness as Ward shall be obliged to pay for the company, together with the principal sum of $750,000, with interest thereon, then the time shall be extended for a sufficient length of time to fully pay up the $750,000, with interest; and that in case the company, its assigns, or the holders of its bonds, at any time after the completion of the road, shall pay to. said Ward the sum of $750,000, and interest at ten per cent per annum, semi-annually, together with his costs, charges, and any liabilities which he may have incurred for said company, then this contract shall cease; and that said Ward shall be President or Managing Director, as he may choose, during the continuance of this lease, to the end and with the intent that Ward shall have complete control of said road, until he is fully satisfied of his advances, charges and interest. It is quite apparent, we think, from these provisions, that Ward was constituted the agent or trustee of the company, to manage the road for the benefit of the company, and apply the net earnings to the payment of his advances. It appears, also, from the agreed statement of facts that, "while said road was being operated under contract (Exhibit "B"), as hereinbefore stated, it was operated in the name of the Burlington and Southwestern Railroad Company, E. B. Ward being President of said company, and exercising such control as such President as he had the right and power under said contract to exercise. Operating the road thus in the name of the company, accounting for the net earnings, and paid for his services, Ward can in no proper sense be regarded as a lessee of the road, liable to answer for the contracts of the company out of his private means.

It is to be observed that the locomotives, for the use of which plaintiff sues, were leased to the Burlington and South-

western Railway Company on the 10th day of May, 1873, three months before Ward entered into his contract with said railway company. Plaintiff, at the time its contract was made, could only look to the railway company for performance. Ward's contract with the railway company did not diminish the means of payment out of the company's earnings. Upon the contrary, by furnishing the means for the completion of the road, it tended to increase its earnings and enhance the means of payment. It is not shown that Ward failed in any respect to fully and fairly account for the earnings of the road.

On the 19th day of October, 1874, E. McKitterick took possesion of the road as receiver. At that time Ward turned over to the receiver the sum of $3,897.66. The outstanding liabilities of Ward, under said contract, for running expenses, salaries of officers, etc., were at that time in excess of said sum, and McKitterick paid it all out on pay rolls, for operating expenses incurred while Ward managed the road. If Ward had paid plaintiff's claim, there would have been a less sum to turn over to the receiver, and other operating expenses must have remained unpaid.

Ward did not hire the locomotives, nor did he personally have the benefit of their use. Indirectly he might have been benefited, if the road had earned enough to apply anything upon the principal or the interest of his advances. But the record does not show that anything was so applied during the time he operated the road. The Burlington and Southwestern Railway Company hired the locomotives, and had the benefits of their use in the earnings of the road.

It appears that during the receivership, and after Ward's death, there was a dividend paid to Ward's estate of $1,500. This dividend was paid out of earnings which accrued after the road passed into the hands of the receiver. Ward's estate was a creditor of the railroad company, and it cannot be held liable to this plaintiff, because a part of the debt due the estate has been paid. If Ward, whilst he managed the

road, had applied to the payment of himself this $1,500, leaving the operating expenses unpaid, l e would, to that extent, probably, have been liable.

It seems quite clear, however, that under the agreed statement of facts the estate of Ward cannot be held liable for the rent of the locomotives in question.

REVERSED.